Good morning, Your Honors. My name is Adam Wolek on behalf of Boon Global, F.A. Vietnam Limited, CFYC Holdings Corp., and Mr. Randy Dobson, and may it please the Court, I would like to save four minutes for rebuttal. Your Honor, this is a case where Judge White brought four foreign parties, not only without reviewing personal jurisdiction, but also compelling them to arbitration where not one of the four parties had signed any contract with Indocent. There was no signatures by any of them and no contracts whatsoever, let alone was there no basis for an arbitration clause. So, in short, the district court clearly erred because no analysis of personal jurisdiction was done over any of the parties. No ---- He alludes to it in his order, doesn't he? Well, he says that the parties were related to Mr. Dobson, but that's not the standard. Walden v. Fuhrer specifically states that each defendant must be viewed as far as their contacts with the State. So each one of whether it was Boone's contacts had to be viewed as far as California, same with CFYC, same with Mr. Dobson. The ---- As I looked at the motions that were filed, they raised the personal jurisdiction issue, correct? They did at the district court level and ---- After the arbitrator said you have to go back to district court? That's right, Your Honor. With the arbitration, that's when Indocent initially tried to cross-claim against these four parties. The arbitrator ultimately dismissed them as far as arbitration saying that it was for the district court to decide whether there was jurisdiction, and then Judge White, without doing the jurisdictional analysis, compelled each one of those parties. Ordinarily, if there is an error made in asserting personal jurisdiction, you appeal it at the end of the case. Mm-hmm. Why shouldn't you do that here? Well, there's multiple errors in this case, Your Honor. All right. Well, let's assume there were multiple errors. But is there any reason it can't be appealed at the end of the case? Yeah. Well, first, there's irreparable harm to the parties. Overall, the whole notion of personal jurisdiction ---- But we've never really found that in the context of just a jurisdictional question. If we granted mandamus on a question of whether there was ---- By the way, I think it's pretty clear, and we'll hear it from the other side, that the district court erred here on the jurisdictional analysis. I totally buy your argument that the ---- I believe if this district court opinion were applied broadly, it would send shockwaves through corporate America. And, you know, it is a travesty from a legal perspective. But we clearly can't just open the door for everyone who is wrongly found to have jurisdiction in the district court, or we'll have mandamus petitions every other week up here. Yes. Other courts have entertained the idea of, for instance, improper venue motions throughout this country. For instance, In re Cray granted rid of mandamus because they found improper venue in Texas. Now, that's grounded on that same basic premise of convenience of the parties, whether the witnesses would be able to show up in various irreparable harms here. The other factor is, is these parties are all foreign entities. And ultimately ---- So why can't they ---- And I think Judge Berzon asked this initially. They have an adequate remedy at the end of the case. They can come up and raise this when the case is fully complete and there's a final order. Well, the tricky part here is by going into arbitration, they'd be subjecting themselves into a different tribunal. If you go to arbitration, you might prevail, correct? Then the case is over, right? Yeah. But if you don't ---- If you lose, you can move the district court to vacate on the grounds that there was a lack of personal jurisdiction. Well, there's several issues with vacating an arbitration order. One, it's a lot more difficult to appeal an arbitration order. Not on the ground of lack of personal jurisdiction over the parties in the first place. I mean, is there any doubt that if the district court reaffirms its ruling about personal jurisdiction that you'd have an appeal? The same appeal that you have now? Not one that defers to arbitration in any way at all? Well, that is true, Your Honor, but there's nothing that bars this type of appeal. One of the bomber factors is, was there a clear error of law? Can I ask about the clear error? Well, sorry. Go ahead and answer her question and then I'll ---- Yeah. It's looking to see whether there was a clear error of law, whether it was immediately appealable. These two bombing factors are considered some of the most important factors for a writ and both here are met, particularly the clear error of the personal jurisdiction, the no ability for immediate appeal. So that also weighs for this court. Can I ask a question about whether there's error or clear error here? Because it may matter. If the district court applied the wrong legal test here, maybe that's error. Is there clear error here, though, in the sense that we can definitively say there's no jurisdiction over the foreign defendants? As I review the record, I don't think there is personal jurisdiction over the foreign defendants, but there's never been, no one's ever requested jurisdictional discovery. And so if there's a possibility of facts coming out in the lower court, is it proper for us now to say there's actually clear legal error here or just that he erred in this instance and we'll see how it carries on throughout the proceedings? Well, in this instance, the other party didn't ask for that type of discovery. You know, our position would be that that had closed. That wouldn't change the fact that jurisdiction is always tied to what type of cause of action you're asserting here. There's no facts that are going to change that, you know, one of these clients is a set of gyms that are only based in Vietnam. Well, but there could be factual development that supports a theory of alter ego. I mean, that's what they've claimed. Now, the district court, ironically, didn't even apply that theory. He just said they were intertwined. Yeah. And I'm not aware of any case law that says that intertwined companies that are foreign based, you know, receive, subject themselves to jurisdiction in the United States just because of that test. But there could be facts that are developed that support that jurisdictional basis. Well, let's go to these facts that may or may not develop this. Ultimately, for any type of judge to ultimately compel these parties into an arbitration, there needs to be some type of an agreement for that arbitration or consent. None of these parties have ever consented to that jurisdiction. Mr. Dobson, his only reference in the agreement is by signing for Parkridge, which is a company in arbitration. There is a fair amount of law under this, you know, specialized equitable estoppel doctrine that although you said in your brief that it only runs in your one direction, my understanding is that that is not true, that the cases have found, have permitted the designation of non-signatories both when they are the plaintiff and when they are the defendant under certain circumstances. So the question is, is this those circumstances? Go ahead. Oh, sorry. Your Honor, that's a great question. It is very rarely applied against non-signatories, parties who haven't signed that contract. And in this instance, this Court has found over and over again that there had to be a knowing exploitation of that contract. That instance where they do apply it. For example, you have these gyms in Vietnam that were planning to use this product and that were the place where they were tried and that were certainly intending to benefit from the contract. So why isn't that good enough? Well, one, that's not knowingly exploiting the contract, which is what needs to link it to that arbitration clause. I'm having trouble knowing why not. I mean, the contract is the contract to produce this product, and there is, you know, a very Mr. Dobson is quite involved in both of those entities, and he and it is was Well, that's actually not the record, Your Honor, respectfully. The app was supposed to be agnostic to whatever company it was. It's an app that you download on the phone that allows you to meet with various personal trainers who pair with you. This wasn't a company-specific app. It wasn't developed for this company, CFYC, that has these gyms. Mr. Dobson once was a CEO of that company, hasn't been for several years, and doesn't have relation to even one of them, and then was only a reserve director for another. He was a CEO formerly, but not for a few years to CFYC. He did not have any relation with FAA Vietnam Limited, and with Boom Global, he was I'm just using the other as an example because I see him the most close in. Okay, well, let's take that company, Your Honor. If anything, that's a pretty generic benefit that doesn't comport with case law that this court has found. For instance, in Comer v. Micor, this court found that even receiving, for instance, benefits under the rights of But now we're back to the clear error standard. Oh, go ahead. All right, so you have to tell me not only why this is wrong, but why it's clear error. Well, Your Honor, the case law says that you have to knowingly exploit the contract. It's always found that that has meant to assert that contract. So for instance, the non-signatories who have been found to be able to bring this to arbitration have either asserted that very contract or have been named beneficiaries of it. That's not the case here. In fact, the contract says that third parties can't even benefit from this contract explicitly. So this would open up a whole new area of basically saying that anybody that receives any benefit from any product or service all of a sudden exploits the contract. That just would make a nonsensical result that would tie together, tie many parties into a contract that they never assented to. Is the arbitration proceeding ongoing? Yes, Your Honor. I see I'm with you. I'll give you time. Don't worry. What's the status of the arbitration proceeding today? Yes, there's still depositions to be scheduled. So there's still expert discovery. The arbitration hasn't gone through the evidentiary hearing yet at this time. That's been scheduled? That has been scheduled. It's scheduled for the end of March. Okay. So, you know. So it's underway? It's underway. As Your Honor knows, arbitration does have a very fast schedule sometimes. But there is still discovery ongoing. Okay. So including expensive discovery. All right. You can save the balance of your time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Mark Figredo for Counter Plaintiff Indies and Inc. Your Honors, I would like to begin by spending about a minute or so going over some of the facts of this case to provide some context. I don't think that's a bad idea. Go ahead. Why don't you go ahead if we know the facts? Okay. Why didn't the district court judge? Do you agree that the district court judge erred in his jurisdictional ruling? I do not. Why not? It looks like he did. If I can provide – I think it would be helpful if I can just – I understand Your Honors know the facts. If you want to give some facts, I'd be interested in facts that show that the corporate veil was pierced because I can't find any in the record. Sure. And as to each specific entity. I understand, Your Honor. If I may, just for a moment. This is a story of two gentlemen, Randy Dobson and Pravin Nara. They met at a conference and decided to transact business. Mr. Dobson developed and operated a series of gyms in Vietnam. California Fitness and Yoga Centers in Vietnam. Mr. Nara developed and operated a software development company. They decided it would be a good idea to get together to develop a fitness app to be used by the California Fitness and Yoga Centers. And as counsel points out, it was not limited to just those centers. It could be used by other gyms. But predominantly, it was developed for use by CFYC. All right. Do you think I understood that when I asked that very question? I really get irritated when I have to sit here and hear something that we already have said. Go ahead. I understand. Can you talk about facts, if that's what you want to go to, that show that the corporate veil was pierced? Because Dobson came in and signed on behalf of Park Ridge. Yes. And said, I'm subjecting Park Ridge to the arbitration provision. And that's what we have here. Then you guys have come in and brought in all these foreign entities that are expressly prohibited under the arbitration agreement from coming in. So the only way I think you get there is by piercing the corporate veil. And I don't see facts that suggest that they haven't complied with corporate formalities here. So we did set forth facts in the exhibits. What facts were those? With respect to Dobson, the Dobson runs and operates basically a network of companies. I understand that. But that's not the test. How does that relate to piercing the corporate veil? Well, with respect to the Weber case that we cited and other cases, when an individual uses corporations as a shell game. But the problem here is that the showing of that is extremely abstract, ephemeral. Not at all what ordinarily goes on in a case in which there's a serious alter ego claim. And, in fact, the district court didn't find an alter ego, did he? Well, it didn't expressly say that. That is correct. It used words like closely related, interrelated, interdependent. That's not good enough. Intertwined. Yes. And the ADO financial AGRE systems, these are alter ego cases. Let's say it's a low bar for jurisdictional purposes. When you're trying to establish alter ego, it's a low bar. A prima facie showing of alter ego is sufficient. Back up. You're suggesting that if you have a CEO of a company who happens to be based in the United States, that in and of itself, because they're intertwined, subjects them to jurisdiction in the United States? No. Well, that seems to be what intertwined means. So help me understand what the difference is here. Well, the difference is in this case, what these gentlemen did, what Dobson did is he took the Parkridge developed app, the Morphit app, and simply moved it like a shell to another one of his entities, which is FateFit, Boone Global, which he set up to avoid the consequence of basically being held accountable for not paying for the app that was developed, but still taking the benefits and using it elsewhere. Our view of this is it's like these network of companies are like an octopus. Okay. They're tentacles. But you still have it. Okay. Assuming that that's true, you still have the claim against Boone. So, I mean, is there, right? I mean, there's no doubt that you, if you think that Boone hasn't paid you, isn't that? Parkridge. Oh, sorry. Parkridge. Your position is Parkridge has not paid you. So then go after Parkridge. Yes. So Parkridge was originally named. Parkridge is subject to the arbitration. There's no dispute that Parkridge is properly before the court, even though Parkridge is a in California. What we're claiming is that what Dobson did is he basically took the development that was made for Parkridge, and instead of continuing to develop it for Parkridge, he rebranded it, not as the Morphit app, but he rebranded it as the FateFit app, then rebranded again as the Leap app. And he's basically taken the development, just moved it out of Parkridge, plugged it into another one of his tentacles, these companies, FateFit, which is Vietnam-based, Boone Global, which is Hong Kong-based, and done it specifically to avoid the consequence of being hailed into court in California to answer for his conduct. Well, but he hasn't. If that's what he was trying to do, he hasn't done a good job, because he agreed to come into California, agreed to go to arbitration. And I should clarify, it's not that Parkridge is still subject to arbitration, but Parkridge is a shell. We prevail against Parkridge and get liability. At what point did you determine that Parkridge was a shell? Because your client was part of Parkridge, was an officer in Parkridge. So are you suggesting that your client was part of this shell game? No. When my client was part of Parkridge, Parkridge was going to be an operational company that was going to hold and develop this Morphit app. Subsequent to the parting of ways, what Mr. Dobson has done is taken that app out of Parkridge, rendered Parkridge just a shell. There's nothing happening there. What is in the record about any of that? In other words, one problem here is that the record is incredibly sparse as to, for example, does Parkridge have any money, in fact? And, I mean, there are some declarations from the people who run these companies, whether they're a shell or not, saying that they observed corporate niceties and they were property capitalized and so on. I mean, there's no proof of that. They're just bare assertions. And then there are some assertions on your side that these were shells. But there's no record. Your Honor, if I may, I want to be clear about this. When the moving papers were filed, the complete record was not presented to this court. With our answer, we did provide documents that were in fact submitted to the district court. But your documents are, you have all these e-mails and so on. But, and so they show that sometimes he was sending e-mails from a different company about this one and so on. But in terms of anything concrete about any of these companies, we don't have it. If anything, the evidence you submitted suggests that Vietnamese California Yoga is a legitimate company. I mean, it's got a whole staff. It's got a, it's got, and by the way, it was set up long before. That's, that's the other problem I have is you say that, well, that's a shell company, but it was transferred to a real company. It's not like California Yoga was created in order to take this app. So I want to be clear about this. It's complicated. There's a network of companies. You wouldn't think that it's complicated by reading the district court opinion, because he spent two sentences on this. Understood. It's a very brief opinion. But isn't that suggests that it's wrong. He didn't do any factual analysis as to different companies. Perhaps you can get it, Dobson. The test for getting jurisdiction over Dobson is far different from the test over getting over the other entities. But you wouldn't know that by reading the district court opinion. Yeah. Well, I just want to know. I agree in the conclusion. You're right. The analysis is, is not as well. It's not as in-depth. But I do think it's the right conclusion. I mean, arguably, it's not just the analysis. It's the bottom line as to the personal jurisdiction, which articulates a standard that doesn't seem to exist anywhere. I mean, they were closely associated. They were intertwined, period. So the the correct standard, as Your Honors have pointed out, is alter ego. I believe that's what the just what the district judge was getting at, although he didn't use that word. And he didn't use the the criterion either. He didn't say anything about whether these were properly capitalized, whether they respected corporate limitations, whether they I mean, the usual thing you run through in a alter ego analysis isn't there. And unlike, for example, the opinion in RANSA, where you were dealing with Nike, which went through every piece of what in a jurisdictional context, what would make it an alter ego? There's nothing here. It's just not there. In the opinion. In the opinion or in the record. That's the other problem. I mean, in the record, there's these attestations by the officers of these companies that say, oh, yes, we did these things. And you don't exactly say whether they do or not. You just say they're shells. There's just nothing specific about them, except these emails that show that sometimes they were sending the wrong from the wrong company. So at the initial stage, without the benefit of discovery, it is very difficult for a party to establish all of this. The prima facie. Why are you operating without the benefit of discovery in a personal jurisdiction context? Why wouldn't you have discovery? You can ask him jurisdictional discovery. Understood. Understood. But I believe the standard is it's a prima facie showing for alter ego. But you didn't even do that. And I don't see anything in here to suggest you even made the prima facie showing. And why didn't you ask for jurisdictional discovery? And if you didn't ask for jurisdictional discovery, shouldn't we then say there's no jurisdiction here? Why should we give you a second bite at the apple to go back and do what you should have done the first go around? Well, I do believe that the discovery we provided. I'm not the discovery, but the evidence we showed was a different brand of alter ego theory. It's not the. It's not. I'm just telling you I've been through it. It's not. And I'd ask you to point me to any of that that actually shows that there's an alter ego theory that's viable between any of these companies. Could you point me to any place in the record one specific piece of evidence other than the emails that have been referenced where there's something that's viable as an alter ego theory? I mean, is that your position that if you send an email from the wrong email account that subjects that other company to jurisdiction? No. I mean, obviously, alter ego theory, it's factors. You have to look at the totality of the conduct. And the totality of the conduct, I mean, I think that's the key here is looking at the totality of the conduct. Okay. So what is it? Dobson was involved in all of these, although he was not officially an owner of. He puts it under his wife's name. Okay. But he really owns it and runs it. And the emails. And what else? That's right. And the conduct. So the emails with NARA, when he first sets up Parkridge and says that, and by the way, I'm just going to go through some conduct, that he's using another company, R&R Holdings. But that's not one of the companies we're dealing with here. So what does that do for you? It shows the use of these entities interchangeably. But not this entity. Maybe if you sued R&H, you'd be in good shape. It's showing he's using Parkridge and Dobson is using Parkridge interchangeably with other entities. But not the ones that you're trying to sue now. And the FateFit and Boone Global were set up to do exactly what Parkridge was meant to do. He's just taken the purpose of that company, parked it in another company. The websites.  There's websites for California Management Group, California Fitness and Yoga Centers, that describe the conduct. Wait, back up. CMG. I thought there was a concession that CMG was related or a part of California Yoga and Fitness. I haven't seen anything to suggest that there's a website that suggests that that should be tied back to Parkridge. I mean, Parkridge is the entity where there's California jurisdiction. Yes. So even if there were some sort of ambiguity about corporate formalities between these Vietnamese companies, it has to come back into an entity that has jurisdiction in California. So if I may, I'm running low on time. I think we've made... You haven't even answered the questions. What is the fact? What is the fact that shows alter ego? I mean, you've had 15 minutes almost and you can't give us a fact. So the connection is between Parkridge and CFYC-CMG, which is the head of the organization and the other tentacles. Parkridge is one tentacle. It is not the head that controls it. Parkridge relates back to the head, which is California Fitness and Yoga Centers and CMG. And then that's the hub. The hub is CFYC and CMG. I know they're related. You're describing the corporate structure of every company that exists in the United States. But that doesn't show anything about alter ego. If I may, just in time, the alternative theory other than alter ego, because it's not just alter ego, that you can't have specific jurisdiction and general jurisdiction on these entities outside of alter ego. And here the specific jurisdiction that it was also briefed is the fact that CFYC reached out to Indyzen, arranged for people to come over to Vietnam to inspect and basically make sure that the app is working with CFYC. Putting aside the alter ego theory, putting that aside, there is an independent basis for specific jurisdiction against these entities. What are your claims? You have a contract claim? It's taking off the developed property, trade secret claims. So I would say contract and tort claims. So what CFYC, CMG, Dobson all did, reached out to them and arranged for them to come out and basically try out the app, see how it's working out in Vietnam. Those trips actually happened. Putting aside specific jurisdiction, there's general jurisdiction. But that's in Vietnam, not here. But they reached out to California for purposes of making those contacts,  CFYC is reaching into California. Well, I'll give you this. At least now you're presenting evidence that actually fits within a legal construct. I don't think it gives jurisdiction, but at least you've used the right legal test. So we're getting somewhere. The trouble is you're out of time. Okay. One more comment or am I done? You get one more comment. General jurisdiction, FakeFit, Boone Global, there's also evidence that they are selling their wares in the Google and Apple stores. There's law that says if you're selling your wares in a California store, that conveys general jurisdiction. So there are independent bases for jurisdiction as well. No, that's not true. Okay. Thank you. Thank you. Thank you. Can I ask you something procedural? Please. If we thought that the district court's analysis was clear error because he didn't really apply an alter ego standard and he didn't, and if there is any other theory such as specific jurisdiction, he didn't articulate that either. As to personal jurisdiction, do we grant the petition for mandamus or deny it? I mean, in other words, as I understand it, we can only grant or deny it. Unlike an ordinary case, we can't remand it to the district court and say, you know, do this again. Is that your understanding as well? Yeah. Grant or deny it, right? Grant. So if we grant it, that doesn't preclude doing it again. Him or do we deny it and say, well, we can't really tell if there's clear error because you didn't really explain yourself. It's a conundrum because it's an oddity. If the problem is that the wrong standard was applied, but we don't know how it would come out under the right standard. Well, there are several issues. Yes, I would say definitely grant it because there was clear. What do we tell the district court to do? To dismiss for lack of personal jurisdiction. So we would have to answer the question. But with the facts before the court, you have that answer, just as if you would on appeal. But you said there was proceedings that have gone forward in the arbitration. Have any of those facts, I guess this would have been a question for the other side, they didn't bring it up. Are there any of those facts suggest that the facts have been developed to support this alter ego theory? No, Your Honor, there's been no facts. You know, frankly, that's not even what the district court judge ruled upon. He explicitly stated that it was under the doctrine of equitable estoppel that he found that the parties were interrelated and interdependent. Nevertheless, even in that arbitration, there just hasn't been any basis. As Your Honor pointed out, CFYC has existed since 2006. It has over 2,000 employees, tens of thousands of members that go to their gyms only in Vietnam. Boom Global licenses software, F8 licenses software. They have no U.S. customers. Those, their apps only work for gyms in Asia. So none of this would be associated. And then more importantly, though, arbitration is a matter of contract. Nobody here signed a contract to assent to that arbitration. And that's where the equitable estoppel lies. They did not try to enforce that contract. There was no obligations of indizen to perform for any of those parties. There was no duties by indizen to any of those parties. And they were explicitly excluded from benefiting from that contract. So they couldn't have been equitable estoppel because there were no benefits from them to gain. I see I'm out of time, Your Honor. Roberts. Yes, you are. Thank you very much. Thank you. Thank you. I thank both sides. We thank both sides for their arguments this morning. Another interesting case. The matter is submitted. Thank you. That ends our session for today.
judges: Paez, Berzon, Nelson